**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **VICTORIA ESPINOZA,** *Individually and* | § | |
| *o/b/o* **H.R. (minor),** | § | |
| | § | |
| *Plaintiffs*, | § | **EP-19-CV-00365-DCG** |
| **v.** | § | |
| | § | |
| **HECTOR GABRIEL CHAVARRIA and** | § | |
| **VRP TRANSPORTATION INC.,** | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Before the Court is "Plaintiffs' Motion for Death Penalty and Monetary Sanctions and Motion for Spoliation Instruction Against Defendant VRP Transportes de Mexico for Witness Tampering" ("Motion") (ECF No. 47), filed by Victoria Espinoza and o/b/o H.R. (minor) ("Plaintiffs") on April 11, 2021 and "Defendant VRP Transportes de Mexico's Response to Plaintiffs' Motion for Death Penalty and Monetary Sanctions and Motion for Spoliation Instruction Against Defendant VRP Transportes de Mexico" ("Response") (ECF No. 51), filed by Defendant VRP Transportes de Mexico ("Defendant VRP") on April 23, 2021. The matter concerning the Motion and Response was referred to this Court pursuant to 28 U.S.C. § 636(b) and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas for a Report and Recommendation ("R&R") on June 4, 2021, by United States District Judge David C. Guaderrama. (ECF No. 92).

For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff Victoria Espinoza's Motion be **DENIED**.

## I.    INTRODUCTION

This is a personal injury suit arising from injuries and damages suffered by Plaintiffs Victoria Espinoza and H.R. (minor) during an incident on or about August 16, 2019[1] in El Paso County, Texas. (ECF No. 17, p. 2). Defendant VRP is a foreign corporation doing business in El Paso County. *Id.* Defendant Hector Gabriel Chavarria ("Defendant Chavarria") is a resident of Mexico who was operating a tractor trailer owned by and entrusted to him by Defendant VRP. *Id.* at 1–2. On August 16, 2019, Plaintiffs were traveling Northbound on S. Americas Avenue in the outside right lane. *Id.* Defendant Chavarria, who was operating a tractor trailer while in the course and scope of his employment with Defendant VRP, made a right turn from the middle lane and collided with the Plaintiffs' vehicle. *Id.* Plaintiffs were injured as a result of the collision. *Id.*

## II.    BACKGROUND

A.    FACTUAL BACKGROUND[2]

On December 3, 2020, Plaintiffs' counsel, Daisy Chaparro, deposed Defendant Chavarria via Zoom. (ECF No. 47, p. 1). Plaintiffs allege that counsel suspected Defendant Chavarria "was being coached and instructed on how to respond to material questions" during his deposition. *Id.* On March 18, 2021, Plaintiffs' counsel also deposed the corporate representative of Defendant VRP, Jose Luis Solorzano ("Solorzano"). Plaintiffs allege that counsel once again suspected that Defendant VRP was "engaging in witness tampering by instructing Solorzano how to respond to counsel's questions" during the deposition. *Id.* at 2.

B.    PROCEDURAL BACKGROUND

On April 11, 2021, Plaintiffs filed this instant Motion seeking a panoply of available

---

[1] Plaintiffs' Motion states this suit "arises out of injuries sustained by Plaintiffs on August 29, 2019." (ECF No. 47, p. 1).

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

sanctions, including the severest possible sanctions.  The Plaintiffs "request the Court strike all of Defendant VRP's pleadings and defenses, impose monetary sanctions, and provide a spoliation instruction to the jury." (ECF No. 47, p. 2). Plaintiffs further request that the Court permit Plaintiffs to play the audio of Solozarno's deposition to the jury, and permit Plaintiffs to depose Isela Soto, the VRP Transportes employee suspected of coaching Solorzano. *Id.* No evidentiary hearing was held before the Court on this matter.[3]

### III.    LEGAL STANDARD

"When parties or their attorneys engage in bad faith conduct, the Court should usually rely on the Federal Rules for sanctions." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410 (5th Cir. 1993), *cert. denied*, 510 U.S. 1073 (1994) (citing *Chambers v. NASCO*, 501 U.S. 32, 50 (1991)). However, federal courts are also vested with the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630 (1962). "A district court has the inherent authority to impose sanctions in order to control the litigation before it." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (internal quotation marks omitted); *Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-00076-H, 2020 WL 6365536, at *2 (N.D. Tex. Aug. 28, 2020). A court may rely on its inherent authority to impose sanctions when "a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute." *Carroll v. Jaques Admiralty L. Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (citing, respectively, *Chambers*, 501 U.S. at 50; *Nat. Gas Pipeline Co.*, 2 F.3d 1397 at 1406).

---

[3] "[T]he right to a hearing . . . is limited to cases where a hearing would assist the court in its decision." *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1418 (5th Cir. 1994) (the Fifth Circuit affirmed that the district court's failure to hold a hearing for sanctions did not violate counsel's due process rights because "a hearing would not have developed or clarified . . . issues"); citing *Hill v. Norfolk & W. Ry.,* 814 F.2d 1192, 1201 (7th Cir. 1987).

"By way of guiding a court's discretion, the Fifth Circuit has determined that finding bad faith is a necessary predicate to issuing an inherent power sanction." *Vestas-Am. Wind Tech., Inc.*, 2020 WL 6365536, at *2; *see Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) ("In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in bad faith."). "A party shows bad faith by delaying or disrupting the litigation or hampering the enforcement of a court order." *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 332 (5th Cir. 2011) (citation and internal quotation marks omitted). "Bad faith conduct requires clear and convincing evidence of a fraudulent intent and a desire to suppress the truth." *Becirevic v. Navient Sols., LLC*, No. 418CV00363ALMCAN, 2019 WL 4054990, at *3 (E.D. Tex. May 30, 2019), report and recommendation adopted, No. 4:18-CV-363, 2019 WL 4253940 (E.D. Tex. Sept. 9, 2019) (internal quotations omitted).

## IV.     DISCUSSION

A.     DEATH PENALTY SANCTIONS USING COURT'S INHERENT POWER

Plaintiffs request the Court to issue death penalty sanctions against Defendant VRP for "its evidence fabrication" (ECF No. 47, p. 5) and "deliberate and repeated witness tampering and perjury." *Id.* at 10. First, Plaintiffs assert that "[t]he evidence in this case has established that Defendant VRP fabricated [Defendant] Chavarria's Hours of Service Log Books." *Id.* at 6. Additionally, Plaintiffs argue that sanctions are appropriate in this case because Defendant VRP allegedly "engaged in the coaching of witnesses on no less than two occasions." *Id.* at 10. Plaintiffs allege that "[d]uring Defendant Chavarria's deposition, an employee of VRP could be heard instructing him how to respond, and on at least one occasion, the reporter was able to transcribe the female speaker's instruction." *Id.*

Generally, "Rule 37(b) of the Federal Rules gives courts broad power to impose sanctions for 'fail[ing] to obey an order to provide or permit discovery.'" *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 844 (S.D. Tex. 2016); *see* Fed. R. Civ. P. 37(b)(2)(A). However, Defendant VRP's alleged conduct, fabrication of evidence, witness tampering, and perjury, do not squarely fit into the discovery framework. Since Defendant VRP's alleged conduct also does not neatly fall within Rule 37 or any other rule, the Court will apply the inherent powers framework. *See Sarco Creek Ranch*, 167 F. Supp. 3d at 845.

The Fifth Circuit has held that "a sanction of involuntary dismissal with prejudice or a similar dispositive or so-called 'death penalty' sanction 'is a harsh sanction' and 'should be confined to instances of bad faith or willful abuse of the judicial process.'" *Lovison v. Gleason*, No. 3:14-CV-1517-P, 2015 WL 5459510, at *9 (N.D. Tex. Sept. 16, 2015), citing *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir.1995) (internal quotations omitted). "Bad faith and willful abuse have been found when a party or its counsel maintains patently unreasonable litigation positions or engages in contumacious behavior that deliberately subverts a court's administration of a case." *Sarco Creek* Ranch, 167 F. Supp. 3d at 845, citing *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76–80 (5th Cir.2011) (affirming dismissal for perjury during deposition testimony); *Woodson*, 57 F.3d at 1417 (affirming death penalty sanctions under the court's inherent power when plaintiff's counsel tried to enforce settlement agreement despite refusing to have client take test that was a condition of the settlement and when counsel filed a mandamus petition for the purpose of creating additional procedural delay).

i.   *Evidence Fabrication of Defendant Chavarria's Hours-of-Service Log Books*

Plaintiffs allege that "Defendant VRP's abuse of process began when it fabricated a material piece of evidence" after "produc[ing] an hours of service log, [and] representing it to be

[Defendant] Hector Chavarria's for August 2019." (ECF No. 47, p. 6); *see* (ECF No. 47-5). Plaintiffs state that "[a]s with any case involving a commercial tractor trailer, the issue of hours of service is **material** to claims of negligence, gross negligence, and specifically, failure to comply with the Federal Motor Carrier Safety Regulations." (ECF No. 47, p. 6) (emphasis in original).

First, Plaintiffs allege that "Defendant Chavarria could not have driven 12 hours on August 13th, 2019, as the logs indicate, because his truck out was out of service for at least part of the day." *Id.* at 8. According to Exhibit 5, Defendant Chavarria drove twelve hours on August 13, 2019. *Id.* at Ex. 5. However, Plaintiffs argue that "information downloaded from the [Federal Motor Carrier Safety Administration] Safety Management System on Defendant VRP Transportes de Mexico indicates that Defendant Chavarria's truck was out of service for the latter half of August 13th, 2019, thus preventing him from having been able to drive his assigned truck for that day." *Id.* at 8; *see id.* at Ex. 8. Defendant VRP responds to this allegation by noting that Plaintiffs fail to provide any "authentication or expert testimony" of the information "allegedly downloaded from the FMCSA Safety Management System." (ECF No. 51, p. 15). Defendant VRP argues that Plaintiffs "fail[] to point the Court to testimony from Defendant[] [VRP's] corporate representative Elizabeth Gonzalez, who explained that just because a vehicle is shown to be out of service does not mean it is out of service the entire day. *Id.* (citing Ex. D: 64:12−21; 65:3−12; 65:19−66:10; 66:15−21). Finally, Defendant VRP argues that "whether there is a contradiction or not [in the evidence presented by the hours-of-service log], this is hardly evidence, much less clear and convincing evidence, of bad faith on the part of the Defendant [VRP] to warrant any sanction." *Id.* at 15.

Plaintiffs also allege that Defendant Chavarria "testified himself that the driver log produced was not even in his handwriting" and that "he was never told by Defendant VRP

Transportes de Mexico to track his driving hours." (ECF Nos. 47, p. 9; 47-1 at 71:0−72:23, 78:10−79:19). Plaintiff argues that Defendant VRP "manufactured evidence and falsely presented [the driver logs] as authentic and legitimate in the course of this federal case" and that "[s]uch conduct is inexcusable and warrants death penalty sanctions." (ECF No. 47, p. 10). Defendant VRP responds that "Exhibit 5 . . . is not signed by anyone, including [Defendant] Chavarria" and "[w]hile Exhibit 5 contains his name and records hours, it does not state Chavarria prepared it or wrote it," so "[t]he document, therefore, does not represent it was written by Chavarria." (ECF No. 51, p. 14). Defendant VRP also argues that "[Defendant] Chavarria testified he did keep track of his hours by clocking in and out," referencing an excerpt from Defendant Chavarria's deposition. *Id.*; *see* (ECF No. 51-2, p. 71:12−71:24). Defendant VRP states that "this evidence [of Defendant Chavarria testifying in his deposition that he did keep track of his hours] shows that while he [sic] Exhibit 5 is not in [Chavarria's] handwriting, [Chavarria and Defendant VRP] were keeping track of his hours" and that "Exhibit 5 may simply be a document reflecting the hours [Chavarria] clocked." (ECF No. 51, p. 14).

In light of the evidence and arguments presented by the parties, the Court declines to recommend imposing death penalty sanctions using inherent powers against Defendant VRP for fabricating evidence. Plaintiffs fail to establish by clear and convincing evidence that Defendant VRP has engaged in bad faith to deliberately subvert this Court's administration of the case. The Court is faced with speculative assertions with limited factual support on whether the log entry for August 13, 2019, is falsified. At most, the record points to possible inconsistencies with regard to this specific evidentiary dispute, and any evidence of bad faith or improper motivation is wholly absent. The record is unclear and this Court cannot make any determination as to whether the hours-of-service log was fabricated, whether Defendant VRP fabricated the log, whether

Defendant VRP aimed to present the handwriting on the log as Defendant Chavarria's, and/or whether Defendant VRP knowingly submitted fabricated evidence to misguide the Court. *See Becirevic v. Navient Sols., LLC*, No. 4:18-CV-00363-ALM-CAN, 2019 WL 4054990, at *6 (E.D. Tex. May 30, 2019), *report and recommendation adopted*, No. 4:18-CV-363, 2019 WL 4253940 (E.D. Tex. Sept. 9, 2019) (where Magistrate Judge declined to recommend sanctions under inherent powers where plaintiff's fraud claim was based on a letter that Defendants claimed was fabricated evidence but there was nothing in the record to support this claim, and no direct evidence that Plaintiff filed its claims "in bad faith or for any improper motive such as harassment or delay, much less to establish that the very temple of justice has been defiled" (quoting *Crain v. Credit Prot. Ass'n*, No. 3:09-CV-2353-D, 2010 WL 2976127, at *5–6 (N.D. Tex. June 30, 2010*), report and recommendation adopted*, No. 3:09-CV-2353-D, 2010 WL 2976120 (N.D. Tex. July 28, 2010)). Therefore, the Plaintiffs have failed to meet their burden of showing bad faith with respect to allegations about the hours-of-service logs. As it stands, the hours-of-service logs are not sufficient to warrant sanctions against Defendant VRP under the Court's inherent power.

  ii.     *Deliberate and Repeated Witness Tampering and Perjury*

Plaintiffs also allege that "Defendant VRP has engaged in the coaching of witnesses on no less than two occasions." (ECF No. 47, p. 10). First, Plaintiffs posit that "[d]uring Defendant Chavarria's deposition, an employee of [Defendant] VRP could be heard instructing him how to respond, and on at least one occasion, the reporter was able to transcribe the female speaker's instruction." *Id.* at 10; (ECF No. 47-1, p. 28:25–30:8). Defendant VRP responds by saying Plaintiffs "seek the severest and ultimate sanction dispositive of Defendant's case" based "on unintelligible and barely audible audio recordings of two alleged instances of witness coaching during a deposition conducted via Zoom over the internet with multiple persons appearing from

various locations (including a witness located in Mexico)." (ECF No. 51, p. 3). Defendant VRP asserts that the "minuscule portion of the audios upon which Plaintiffs rely are unintelligible or at best garbled and barely audible[,]" "[n]or do the audios prove where the noises upon which Plaintiffs rely are coming—from Plaintiff's counsels' location(s), from the Translator's location, from the Court Reporter's location, from Defendants' counsel's location, from the room where the witness was testifying or from outside the room from where he was testifying, or were they echoes." *Id.* at 4. Defendant VRP states that except "for Plaintiffs' counsel claiming to have heard a female voice, the record is silent as to the sex of the 'unidentified speaker,'" and the "'unidentified speaker' could have been at any location where anyone appearing at the deposition was present or outside the office of anyone, or an echo." *Id.* at 9. Finally, Defendant VRP argues that "not only did [Defendant] Chavarria deny anyone was in the room with him and assisting him, but he also proved no one was in the room by moving the camera used for his Zoom deposition around the room in which he was." *Id.* at 11 (citing 51-2, p. 28:2–32:19).

Second, Plaintiffs also argue that Defendant VRP "coached its authorized representative Jose Luis Solorzano on [sic] during his deposition." (ECF No. 47, p. 13). Plaintiffs assert that "[a]t Solorzano's deposition, the coaching related to matters material to the semi-truck collision case at issue–whether Defendant VRP provided adequate safety training and whether it complied with hours-of-service regulations." *Id.* at 10. Plaintiffs note that [b]eginning at minute 29:08 and continuing on to 37:37, the [deposition] audio makes clear the presence of someone in the room with Solorzano, tampering with his testimony by coaching him on his responses." *Id.* at 13. Plaintiffs continue that "[e]ven after Plaintiff's counsel James Tawney notes on the record that he is aware a female voice has been coaching Solorzano, the female speaks once more at minute 30:12 and again at 31:43." *Id.* at 14. Plaintiffs maintain that the "presence of an unidentified speaker

during Solorzano's deposition is also clear upon review of the audio waves depicted in the precise portion of the audio in which no one is speaking on the record, yet a background female voice is faintly heard providing the answer Solorzano ultimately repeats." (ECF No. 47, p. 11). Finally, Plaintiffs assert in a footnote that while "not reflected in the transcript, a female voice is evident at this precise point in the audio minutes 22:44." *Id*. at 11, n.1. Defendant VRP responds by pointing out that "listening to the lengthy audio [of Solorzano's deposition], Exhibit 2, will prove that in addition to the noise up on which Plaintiffs bases [sic] their Motion, Exhibit 2 contains additional noise, including voices, apparently from outside the room where the witness was testifying." (ECF No. 51, p. 4, citing 51-2, p. 20:9−20:14, p. 24:7−24:25). Defendant VRP also notes "[s]ignificantly, when Plaintiff's counsel made his accusation of a woman being in the room with the deponent, he instructed the deponent to turn the video camera around the room," "the "witness complied," and "[n]o one was inside the room of the deponent." *Id.* at 5 (citing 51-2, p. 12:2−16:4). Finally, Defendant VRP argues that in addition to "weak audio clips, Plaintiffs include three pictures of alleged audio waves of audio clips and argue, without expert testimony, that the waves verify a female's voice can be heard . . . the pictures are not properly proven up as evidence . . . [t]hey lack foundation." (ECF No. 51, p. 8).

The Court has carefully listened to the audio, which the Plaintiffs have indicated was quality-enhanced by an unspecified person in their employ. These enhanced audio clips that Plaintiffs provide can only be described as entirely unintelligible. The Court has attempted at length to carefully listen (and using varying audio devices, including several types of headphones) to decipher what is being said; despite its repeated efforts, it has been unable to do so. The Court's review of the audio recordings leads to the conclusion that Plaintiffs, at best, demonstrate only the existence of a faint voice coming from somewhere in the background of the recording. It is

impossible for the Court to determine, based on the evidence provided, whether there was an unidentified speaker *in* the room, or whether this individual was coaching the witness. Moreover, the despondent Chavarria was asked to scan the room with his device camera, which did not show anyone in the room. It is similarly impossible to ascertain what was said by this recorded voice and ascribe to it any substance or meaning whatsoever. Moreover, it is certainly a real stretch, from an evidentiary perspective, for Plaintiffs to present these recordings to the Court as clear and convincing evidence of coaching, tampering, or perjury. Without more, the enhanced audio clips of the depositions, the pictures of audio waves of the audio clips alleging a female voice, and corresponding exhibits are not remotely sufficient to warrant sanctions against Defendant VRP under the Court's inherent power.

Similarly, the Plaintiffs have provided no evidence to support the conclusion that Defendant Chavarria or representative Solorzano committed perjury during their deposition testimonies. There is insufficient evidence to support a conclusion that Defendant VRP, or anyone, tampered with Defendant Chavarria or Solorzano's testimonies. The Court is mindful of the unprecedented challenges presented by the use of the Zoom platform for depositions during the COVID-19 pandemic. It has been an invaluable tool, allowing courts and litigators to continue their work in a safe manner. The legal profession has adapted to conducting its work within the constraints of this format. In this case, however, Zoom presents us with an unprecedented dispute with facts that would essentially be non-existent in a situation where the parties, attorneys, and court reporter would have all been present in the same room. There are simply no facts present here to show anything beyond a subjective suspicion that malfeasance was afoot. The recordings, their enhancement, and related graphic representations are nothing resembling a smoking gun here. Conjecture without persuasive evidence will not suffice to meet the high burden required of this

Court to make a finding of bad faith by one of the parties. It goes without saying that the parties are aware of their legal and ethical obligations to protect the integrity of the discovery process, and the Court has a duty to ensure the same. The evidence presented here by the moving party simply misses the mark.

Therefore, due to insufficient evidence to support Plaintiffs' allegations of evidence fabrication of hours-of-service logs and allegations of witness tampering and perjury, this Court will **NOT RECOMMEND** that death penalty sanctions against Defendant VRP are warranted at this time.

B.    MONETARY SANCTIONS UNDER COURT'S INHERENT POWER (INCLUDING ATTORNEY'S FEES AND REASONABLE EXPENSES AND COSTS)

Plaintiffs also request monetary sanctions against Defendant VRP, including attorney's fees and reasonable expenses and costs considering Defendant VRP's "repeated and deliberate bad faith acts." (ECF No. 47, p. 15). Plaintiffs allege that Defendant VRP "has disrupted the instant litigation through its tampering of [Defendant] Chavarria and Solorzano's depositions." *Id*. Additionally, Plaintiffs state that "fabricating the hours of service logs have caused Plaintiffs to waste time and resources in the form of attorney's fees and costs, all based upon documents clearly fabricated by Defendants." *Id.* at 16. In sum, Plaintiffs request this Court to "award Plaintiffs all reasonable attorneys' fees and expenses incurred in the preparation" of the instant motion. *Id*.

The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. *Flaksa v. Little River Marine Const. Co*., 389 F.2d 885, 888 (5th Cir. 1968). "A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" but "must make a specific finding that the sanctioned party acted in bad faith

in order to impose such sanctions." *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997). "[E]ven if a statute or rule governs the imposition of attorney's fees, a court may 'resort to its inherent power to impose attorney's fees, as a sanction for bad faith conduct.'" *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998), citing *Chambers*, 501 U.S. at 50. "It is well-settled, however, that the threshold for the use of inherent sanctioning power is high, and once the power is invoked, it must be exercised with restraint and discretion." *Maguire Oil Co.*, 143 F.3d at 209, citing *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir.1995) (citations omitted).

However, Plaintiffs fail to establish that Defendant VRP has acted in bad faith. This Court is presented with no evidence to suggest that Defendant VRP offered the hours-of-service logs to delay or disrupt the litigation. Furthermore, there is no evidence to confirm that the circumstances of Defendant Chavarria and Solorzano's depositions were deliberate attempts by Defendant VRP to delay or disrupt the litigation in bad faith. As a result, this Court will **NOT RECOMMEND** that monetary sanctions against Defendant VRP are warranted at this time.

C.   SPOLIATION INSTRUCTION

Plaintiffs posit that Defendant VRP has "meaningfully altered evidence and has prejudiced Plaintiffs," and that "in addition to sanctions, a spoliation instruction is justified in this case." (ECF No. 47, p. 16). "Spoliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010); *see Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) ("[S]poliation is the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." (internal quotations omitted)).

"Destroying or altering evidence, however, does not necessarily mean that the party has engaged in sanction-worthy spoliation." *Ashton*, 772 F. Supp. 2d at 799–800. "Instead, the Court must first find the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party." *Id*. at 800; *Rimkus*, 688 F. Supp. 2d at 612, 615–16. Additionally, "absent bad faith by the party alleged to have spoiled the evidence, the Fifth Circuit will not find that spoliation occurred." *Trahan v. Melancon*, No. 6:14-CV-00722, 2017 WL 710953, at *11 (W.D. La. Feb. 21, 2017), *aff'd sub nom. Trahan ex rel. Trahan v. Melancon*, 724 F. App'x 351 (5th Cir. 2018); *see United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (holding district court did not err in declining to instruct jury on spoliation where there was no evidence that government acted with bad faith); *see also Williams v. Briggs Co.*, 62 F.3d 703, 708 (5th Cir. 1995) (affirming district court's finding of no spoliation where the evidence was not destroyed or lost and plaintiff offered no evidence to suggest defendant altered the evidence at issue).

Plaintiffs argue that Defendant VRP has "meaningfully altered relevant evidence and has prejudiced Plaintiffs" by instigating the "coaching of its witnesses" and "interfer[ing] with the depositions of Defendant Chavarria and corporate representative Solorzano for the purpose of depriving Plaintiffs of truthful testimonial evidence." (ECF No. 47, p. 17). Plaintiffs state that "Defendant VRP specifically interfered with and altered the testimony regarding Defendant VRP's safety training and compliance with the hours-of-service regulations—both critical issues to Plaintiff's claims." *Id*. By this statement, Plaintiffs seem to include fabrication of the hours-of-service logs as evidence warranting a spoliation instruction in this case.

However, Plaintiffs have provided no direct evidence that Defendant VRP has willfully altered evidence, or done so in bad faith. Nor have Plaintiffs proven that Defendant VRP deliberately altered the hours-of-service logs to deprive the Plaintiffs or the Court of the evidence.

Plaintiffs' main evidence of the alteration of deposition testimonies are enhanced audio clips from the depositions of Defendant Chavarria and corporate representative Solorzano. *See* (ECF No. 47, Exs. 2, 3, 4). Additionally, Plaintiffs allege fabrication of evidence by providing an hours-of-service log. *See id.* at Ex. 5. The Court cannot recommend a spoliation instruction based on this mere interference. Without direct evidence to support Plaintiffs' position, the Court cannot rule on Defendant VRP's alleged "bad faith" or "abuse of the judicial process." While Plaintiffs attempt to argue the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party, the factor analysis remains meaningless absent a finding of bad faith on Defendant VRP's part. Without more, the enhanced audio clips of Defendant Chavarria and Solorzano's depositions and the hours-of-service logs are not sufficient to recommend a spoliation instruction at this time. Therefore, the Court will **NOT RECOMMEND** a spoliation instruction as an inherent power sanction.

D.     OTHER SANCTIONS

    i.     *Permitting Plaintiffs to Play Enhanced Audio of Solorzano's Deposition as an Inherent Power Sanction*

Plaintiffs argue that "[i]n the instant case, Solorzano and [Defendant] Chavarria both perjured themselves repeatedly," with Solorzano "perjur[ing] himself while acting in his capacity as Defendant VRP's authorized representative." (ECF No. 47, p. 18). Plaintiffs posit that they should be permitted to play the audio of Solorzano's deposition to assist the jury in its assessment of Solorzano and Defendant VRP's credibility." *Id*. However, Plaintiffs have not provided this Court, nor has the Court found, any precedent to support the argument that this request falls under the scope of the Court's inherent power to sanction.

The Court's inherent power should be used sparingly. "If an applicable statute or rule can adequately sanction the conduct, that statute or rule should ordinarily be applied, with its attendant limits, rather than a more flexible or expansive 'inherent power.'" *Rimkus*, 688 F. Supp. 2d at 611; *see Chambers*, 501 U.S. at 50; *see also Nat. Gas Pipeline Co.*, 2 F.3d at 1410 ("When parties or their attorneys engage in bad faith conduct, a court should ordinarily rely on the Federal Rules as the basis for sanctions."). It seems to the Court that any such evidentiary decisions are best handled by the trial court at trial, in light of the fact that this Court does not deem this dispute a matter that can be properly disposed of by its inherent sanction authority. Since, based on Federal Rules of Civil Procedure, witness credibility may be determined before the jury on direct and cross-examination during trial (*see* Fed. R. Civ. P. 611), the Court will **NOT RECOMMEND** permitting Plaintiffs to play enhanced audio of Solorzano's deposition as an inherent power sanction.

ii.    *Permitting Plaintiffs to Depose Isela Soto, a VRP Transportes Employee Suspected of Coaching Defendant Chavarria and Defendant VRP's Corporate Representative Solorzano*

Plaintiffs allege "that the individual interfering with the deposition testimony and instructing Defendants how to respond is Isela Soto, Defendant VRP's Human Resources Manager and attorney." (ECF No. 47, p. 18). Plaintiffs maintain that "[b]ased on Defendant Chavarria's testimony, Isela Soto was present and nearby at the time of Defendant Chavarria's deposition." (ECF No. 47-1, p. 30:21–31:25) (where Plaintiffs' counsel asks "Are you located in the office with Isela Soto?" and Defendant Chavarria responds, "Yes."). Plaintiffs allege that "[g]iven the pattern a the [sic] female voice heard in Defendant Chavarria's deposition and Defendant VRP's corporate representative deposition, in addition to Chavarria's confirmation that . . . Isela Soto was in the

room with him at some point, Plaintiffs' counsel suspect Isela Soto also coached Solorzano during his deposition." (ECF No. 47, p. 19).

Once again, Plaintiffs fail to provide any authority or precedent to verify that this request is validly subject to the Court's inherent power to sanction. "If an applicable statute or rule can adequately sanction the conduct, that statute or rule should ordinarily be applied, with its attendant limits, rather than a more flexible or expansive 'inherent power.'" *Rimkus*, 688 F. Supp. 2d at 611. Since a party may depose any person with or without leave of the Court under the Federal Rules of Civil Procedure (*see* Fed. R. Civ. P. 30, 31), and this process is possible independent of the Court's inherent power to sanction, the Court will **NOT RECOMMEND** permitting Plaintiffs to depose Isela Soto as an inherent power sanction.

## V.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiffs' Motion for Death Penalty and Monetary Sanctions and Motion for Spoliation Instruction Against Defendant VRP (ECF No. 47) be **DENIED**.

**SIGNED** and **ENTERED** this 14th day of January, 2022.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT WITHIN FOURTEEN DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN**

**ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**